UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SIDNEY BENTO DE SOUZA, | ) |
| Petitioner, | ) |
| v. | ) Civil No. 25-13189-LTS |
| ANTONE MONIZ et al., | ) |
| Respondents. | ) |

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

December 9, 2025

SOROKIN, J.

    Sidney Bento de Souza, a citizen of Brazil who is in immigration detention, seeks a writ of habeas corpus under 28 U.S.C. § 2241. His petition is ALLOWED as described below.

    In August 2022, Bento de Souza attempted to enter the United States without inspection and encountered Customs and Border Protection ("CBP") officers near El Paso, Texas. Doc. No. 1 ¶¶ 1, 16; Doc. No. 10-1 ¶¶ 6–7. He was detained, and CBP invoked the expedited removal procedure established in 8 U.S.C. § 1225(b)(1), which applies when immigration offers inspect "aliens arriving in the United States." Pursuant to that process, on August 26, 2022, CBP completed the top portion of a form entitled "Notice and Order of Expedited Removal," documenting its finding that Bento de Souza was "inadmissible to the United States." Doc. No. 14-1 at 1. Because Bento de Souza claimed a fear of returning to Brazil, the remainder of the form—the portion comprising the expedited removal order itself—was left blank. Id.

    CBP referred Bento de Souza to U.S. Citizenship and Immigration Services ("USCIS") for a credible fear interview. Doc. No. 10-1 ¶ 8. Three days later, when no interview had yet

occurred, Immigration and Customs Enforcement ("ICE") paroled Bento de Souza into the United States "pending the scheduling and outcome of the" interview. Id. ¶ 9; see 8 U.S.C. § 1182(d)(5)(A) (allowing for discretionary, temporary parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit"). A document entitled "Interim Notice Authorizing Parole" specifies that Bento de Souza's parole would be "valid for one year beginning from" August 26, 2022, and would "automatically terminate upon [his] departure or removal from the United States or at the end of the one-year period unless ICE" provided him "with an extension at its discretion." Doc. No. 14-1 at 4.

More than three years passed without USCIS conducting a credible fear interview, during which time Bento de Souza lived continuously in the United States, apparently in full compliance with the law and the conditions governing his release by ICE. See Doc. No. 1 ¶ 17; cf. Doc. No. 10-1 ¶¶ 9–10 (describing no encounters with immigration or law-enforcement officials between August 2022 and October 2025). Then, on October 29, 2025, he was arrested by ICE when he reported as required for a routine check-in at ICE's Field Office in Boston. Doc. No. 1 ¶¶ 2, 18; Doc. No. 10-1 ¶ 10.

Bento de Souza filed the habeas petition that initiated this action the same day.[1] Doc. No. 1. The respondents answered the petition by highlighting the expedited removal process invoked in 2022 which, they argued, distinguishes this case from others in which the Court has construed the relevant detention statutes. See Doc. No. 10 at 1, 9–17; see also, e.g., Order,

---

[1] Bento de Souza was in Massachusetts at the time the petition was filed, but shortly thereafter ICE transported him to a detention facility in Rhode Island where he remains now. See Doc. No. 10-1 ¶¶ 11–12; see also Doc. No. 10 at 3 & n.3 (explaining transfer began before docketing of order prohibiting removal from Massachusetts and had been underway for more than an hour before ICE learned of order). He does not suggest his transfer violated the Court's order, interferes with his access to counsel or the Court, or otherwise warrants action by the Court.

Garcia v. Hyde, No. 25-cv-11513-LTS (D. Mass. July 14, 2025), ECF No. 21 (concluding petitioner arrested inside United States was not subject to detention under 8 U.S.C. § 1225 in case where no expedited removal notice had issued).  Because Bento de Souza had not addressed the expedited removal notice, the Court invited and received a reply brief.  Doc. No. 12.

After considering the parties' arguments and reviewing the declaration filed by the respondents in support of their answer, the Court directed the respondents to supplement the record with various underlying records documenting Bento de Souza's encounters with immigration authorities.  See Doc. No. 13.  The respondents have now submitted those items, Doc. No. 14, and provided an update about Bento de Souza's removal proceedings, Doc. No. 16.  These submissions reflect that a credible fear interview was scheduled, Doc. No. 14-2 ¶ 10, but then cancelled upon an exercise by ICE of its "discretion" to institute traditional removal proceedings and vacate the expedited removal notice, Doc. No. 16 at 1.  This decision by ICE was implemented via a Notice to Appear issued November 18, 2025, Doc. No. 16-1, though the removal hearing originally scheduled for December 4 was continued for two weeks to permit Bento de Souza to secure counsel, Doc. No. 18.

Having reviewed the parties' submissions and the various exhibits supplied by the respondents, the Court concludes that Bento de Souza is entitled to habeas relief.[2]  The

---

[2] The Court's review of the records the respondents have produced cause it to question the reliability of the declarations submitted by Supervisory Detention and Deportation Officer Sarah Lapointe on behalf of ICE and the other respondents.  Lapointe has provided two declarations, both of which are based on her review of records (not personal knowledge).  See Doc. Nos. 10-1, 14-2.  But the records now produced to the Court undermine certain representations made by Lapointe.  For example, Lapointe's first declaration stated that "ICE issued an expedited order of removal against" Bento de Souza.  Doc. No. 10-1 ¶ 8.  That is not accurate.  As noted above, the underlying document is only partly completed, with the expedited order section left blank.  Doc. No. 14-1 at 1.  In her second declaration, Lapointe stated ICE intended to issue a "discretionary Notice to Appear," vacating the expedited removal order and initiating full removal proceedings.  Doc. No. 14-2 ¶¶ 11–12.  But in the Notice to Appear that issued the same day as Lapointe

respondents' position—that Bento de Souza is, and has always been, subject to mandatory detention under § 1225(b)(1)—is not supported by the record or the law.[3]  In defining the removal process that CBP initiated at the border, Congress enacted clear statutory language under the heading "expedited removal of inadmissible arriving aliens," defining procedures that are designed to be employed at the border and promptly.  8 U.S.C. § 1225(b)(1)(A); cf. Fiallo v. Bell, 430 U.S. 787, 792 (1977) ("This Court has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." (citation modified)).  If, during screening, a noncitizen claims a fear of returning to their nation of origin, an asylum interview is conducted "either at a port of entry" or another designated location.  § 1225(b)(1)(B)(i).  Where the interviewer rejects the claim of fear, the noncitizen "shall" be ordered removed "without further hearing or review" unless they request "prompt review by an immigration judge" of their credible fear claim.  § 1225(b)(1)(B)(iii)(I), (III).  If review by an IJ is requested, Congress required that it occur "as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the" determination under review.  § 1225(b)(1)(B)(iii)(III).

      Here, the respondents invoked, but did not follow through with, the expedited process defined by these unambiguous provisions.  Bento de Souza was screened and found inadmissible.  But when he claimed a fear of returning to Brazil, rather than securing for him a

---

signed her second declaration, the respondents did not mark boxes that would have designated Bento de Souza an "arriving alien," or a person whose expedited removal order was being vacated in favor of a discretionary referral for full removal proceedings.  Doc. No. 16-1 at 1.

[3] The respondents do not rely on § 1225(b)(2), nor could they.  As this Court and others have concluded elsewhere, that provision supports detention only where an "applicant for admission" is engaged in the present-tense action of "seeking admission."  See, e.g., Guerrero Orellana v. Moniz, No. 25-cv-12664-PBS, 2025 WL 2809996, at *6–7 (D. Mass. Oct. 3, 2025) (noting "seeking admission" "implies some present action" and is not met where noncitizen "applicant for admission" arrived years ago and has lived here continuously ever since).

prompt interview with USCIS, the respondents released him with a time-limited grant of parole. Having done so, they took no action whatsoever for more than three years—despite Bento de Souza apparently making himself available to immigration authorities throughout that time by appearing as required for routine check-ins. By October of this year, Bento de Souza had long resided in this country, and any effort to remove him could no longer be described as "expedited." Even after his arrest, the respondents did not promptly arrange a credible fear interview. See Doc. No. 14-2 ¶ 10 (describing interview scheduled for date more than three weeks after Bento de Souza's arrest).

In these circumstances, the respondents cannot reasonably continue to invoke § 1225(b)(1) to justify Bento de Souza's detention. That statute governs removal proceedings Congress intended to be undertaken "expeditiously." Such proceedings must be conducted as Congress defined them—not via a process initiated but held in abeyance for years through no fault of the noncitizen involved, then reinstated long after screening at the border ended, an initial period of parole expired, and the swift credible fear process Congress designed should have occurred. Cf. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 140 (2020) (holding "applicant for admission" detained at or near the border is guaranteed those rights "that Congress has provided by statute"). Indeed, the record suggest some officers acting on behalf of the respondents understood that any effort to pursue Bento de Souza's expedited removal could no longer be justified. When full removal proceedings were only recently instituted at ICE's discretion, they began pursuant to a Notice in which the respondents did not mark any of the boxes available that would have reflected a continued intent to rely on the procedures described in § 1225. See Doc. No. 16-1 at 1 (leaving unchecked boxes for "arriving alien," vacated expedited removal order, and referral after finding of credible fear, and instead marking only

option applicable generally to noncitizens "present in the United States").  Given all this, the Court concludes Bento de Souza can be detained only pursuant to § 1226—or not at all.

Even if the Court were to conclude otherwise and find Bento de Souza remains subject to § 1225(b)(1), as the respondents urge, the Court would still conclude he is entitled under the Constitution to a bond hearing.  This is so for reasons recently and ably explored by Judge Murphy, which this Court endorses and incorporates by reference here.  See Rincon v. Hyde, No. 25-cv-12633-BEM, 2025 WL 3122784, at *1–10 (D. Mass. Nov. 7, 2025) (finding noncitizen living in United States under grant of humanitarian parole had due process rights that entitled him to bond hearing after parole was revoked).

Accordingly, the Court hereby ALLOWS the petition and ORDERS as follows: 1) the respondents shall release Bento de Souza unless he is provided a bond hearing under 8 U.S.C. § 1226(a) **by December 12, 2025**;[4] 2) the respondents shall not retaliate against the petitioner in the context of the bond hearing or otherwise for filing this habeas petition; and 3) the respondents shall file a status report no later than December 16, 2025, describing their compliance with this Order.

                                                                                              SO ORDERED.

                                                                  /s/ Leo T. Sorokin
                                                               United States District Judge

---

[4] At the hearing, the government will have the burden of either proving by clear and convincing evidence that the petitioner poses a danger to the community, or proving by a preponderance of the evidence that he is a flight risk.  Hernandez-Lara v. Lyons, 10 F.4th 19, 42 (1st Cir. 2021).